IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| v. ) | |
| ) | Criminal No. 3:17-CR-00015-HEH |
| LUIS FERNANDO GARCIA-ORELLANA, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE SENTENCE

Luis Fernando Garcia-Orellana ("defendant" or "Mr. Garcia") submits this Sentencing Memorandum and Motion for Variance Sentence in support of his request for a sentence of a 120-month term of imprisonment, to be followed by a three-year period of supervised release. Such a sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). Mr. Garcia's character and background bear no relationship to the offense for which he entered a guilty plea. He is a devoted husband, a father of five children, and a well-respected member of his community. He is a decent, hard-working, and law-abiding person whose conduct in this case is completely inconsistent with the way he had lived his life prior to November 2012. This conviction is truly an aberration in a life otherwise devoted to raising his family and to helping others.

### Statement of Law and Argument

The United States Sentencing Guidelines are advisory only and courts must "take account of the Guidelines together with other sentencing goals" set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220 (2005). Specifically, judges must "impose sentences that reflect the seriousness of the offense, promotes respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed

1

[educational or vocational] training and medical care." *Id.* (citing 18 U.S.C. § 3553(a)(2)). The United States Sentencing Guidelines cannot be employed as a substitute for the sentencing court's own independent determination of a just sentence based upon a full consideration of all the statutory sentencing factors, *see Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009).

In the present case, this Court has the ability to fashion a sentence for Mr. Garcia that represents more than the mere rote application of a formula. While the advisory Sentencing Guidelines, as accurately computed by the Probation Officer, suggest a sentence of 240 months, the statutory maximum for a violation of 18 U.S.C. § 1956(h), a variance sentence of a 120-month term of imprisonment, followed by a three-year period of supervised release will both address the 18 U.S.C. §3553(a) factors, and be more than adequate but not greater than necessary to achieve the sentencing goals.

### The Sentencing Factors of Section 3553(a)

While none of the factors listed in Section 3553(a) should be given any greater weight or consideration than another, Mr. Garcia submits the following information to in support of his position at sentencing.

#### 1. *The Sentencing Guidelines*:

In this case, the probation officer has correctly calculated the Sentencing Guidelines: a base offense level of 38; a two point enhancement, pursuant to U.S.S.G. § 2S1.1 (b)(2)(B); a two-point enhancement, pursuant to U.S.S.G. § 2S1.1 (B)(3); and a three-level reduction for acceptance of responsibility, resulting in a total offense level 39. Mr. Garcia's criminal history category is I (as he has no prior arrests or convictions), resulting in a sentencing "range" of 240 months, the statutory maximum for the underlying offense. However, absent the statutory

maximum of 240 months, the applicable Sentencing Guidelines range for total offense level 39, criminal history category I, is 262-327 months. As the Probation Officer correctly states: The guideline for a violation of 18 U.S.C. § 1956(h) is USSG §2S1.1. Pursuant to § 2S1.1 (a)(1), 2D1.1 is referenced when determining the offense level. The base offense level is 38. USSG §§ 2S1.1 (a)(1) and 2D1.1 (a)(5) and (c)(1), as the underlying offense involved more than 450 [kilograms] of cocaine. PSR, ¶16.

In this case, Mr. Garcia is charged with conspiracy to commit international money laundering, not drug trafficking. A drug trafficking offense (21 U.S.C. § 846 and/or § 841) involving more than 450 kilograms of cocaine would expose a defendant to a maximum sentence of life imprisonment (21 U.S.C. § 841(a)(1)(b)(1)(A)(ii). Under the same statute, such a defendant would also be subject to a ten-year mandatory minimum term of imprisonment. Conspiracy to commit international money laundering, (18 U.S.C. § 1956 (h)) does not carry any mandatory minimum term of imprisonment, and has a statutory maximum sentence of 20 years. A variance in this case is necessary to avoid a miscarriage of justice wherein a defendant with no prior criminal record enters a guilty plea and under a strict application of the Sentencing Guidelines is then sentenced to the statutory maximum sentence of 20 years.

Mr. Garcia asks this Court to exercise its discretion and vary downwards eight levels from a base offense level of 38, to a base offense level of 30. A downward variance of eight levels would result in a total offense level of 31 and, at criminal history category I, a guideline range of 108 to 135 months. A sentence of 120 months incarceration, followed by three years of supervised release, would represent an appropriate sentence for Mr. Garcia.

### *3553(a)(1): History and Characteristics of the Defendant*

But for the conduct that brings him before this court, Mr. Garcia has otherwise lived an exemplary life centered around family, work and community. He is the middle son of Ricardo Garcia and Dora Orellana. PSR, ¶ 35. His father, a graduate of West Point, was in the Guatemalan military and was assassinated in 1972. PSR, ¶36. Mr. Garcia's mother remarried in 1979/1980. Mr. Garcia had a good relationship with his step-father, Hector Illenscas, who passed away in 2008. PSR, ¶36.

Mr. Garcia married Audrey Izaguirre in 1993 and they have five children ranging in age from 10 to 19. Mr. Garcia's wife is not employed outside the family home. PSR, ¶ 39. In 2007, Mr. Garcia, his wife, and their five children moved from Guatemala to California to escape from the increasing violence in Guatemala. PSR, ¶ 40. Mr. Garcia is legally residing in the United States as a permanent resident (PSR, ¶ 42), as are his wife and children. Mr. Garcia became involved in his family's business in Guatemala at the age of 13. PSR, ¶43, at p. 18. After school, he managed to do his homework and still play a very active role in the family business. At age 17, he took on an even bigger role in the business and received a Bachelor's Degree in Computer Science. PSR, ¶ 43, at p. 18. In 1988, Mr. Garcia was admitted to the Business School at Universidad Francisco Marroquin. He continued working in the family business, and graduated in 1992 with a degree in Economic Sciences. PSR, ¶ 43, at p. 19.

After graduation, Mr. Garcia started a clothing and shoe business. He received an MBA in 1995. PSR, ¶ 43, at p. 19. Thereafter, in 1997, Mr. Garcia started a new (and ultimately very successful) business importing chicken from the United States. PSR, ¶ 43, at p. 19-20. Mr. Garcia's next business venture involved providing mobile telephone service to Guatemala, El Salvador and Honduras. PSR, ¶ 43, at p.20. After the telephone business ended in 2004, Mr.

4

Garcia became involved in a joint venture wherein his company built several water system projects, including water treatment plants and sewer systems in poor rural areas in Belize, Guatemala, El Salvador, and Honduras. PSR, ¶ 43, at p.20. His company donated approximately 10% of its profits to local communities for medicine, books, and other school supplies. PSR, ¶ 43, p. 21.

In 2001, Mr. Garcia then purchased a small cattle farm in rural Guatemala. PSR, ¶43, at p. 21. He hired local children to work on the farm, but insisted that they attend school and maintain good grades. PSR, ¶43, at p.21.

From 1997-2006, Mr. Garcia and his wife had five children. They invested in their children's education by sending them to bilingual private school in Guatemala. In 2007, after a failed kidnap attempt of one of his children, Mr. Garcia moved his family to the United States. PSR, ¶ 43, at p. 22.

Since moving to the United States in 2007, Mr. Garcia has been self-employed as a broker and business consultant. Mrs. Garcia elected not to work outside the home, so her focus could be on successfully raising their five children. PSR, ¶ 43, at p. 22. Besides running his business, Mr. Garcia has volunteered his time in the promotion of internships for American students in Central America. He has also been involved (through his church) in sending used clothing, shoes, toys, and medical supplies to religious and non-profit organizations in Guatemala and El Salvador. PSR, ¶ 43, p. 23.

Finally, Mr. and Mrs. Garcia are rightfully proud of their children whose various accomplishments are set forth at length in the PSR, see ¶ 43, at p. 23-25.

5

### I. *3553(a)(1): The Nature and Circumstances of the Offense*

The facts in this case disclose that Mr. Garcia acquired several aircraft in the United States that were subsequently used by a Guatemalan drug trafficking organization to transport several thousand kilograms of cocaine from Venezuela to Central America. PSR, ¶ 9. In doing so, Mr. Garcia caused the transfer of funds to purchase the aircraft as described in the PSR, ¶ 9, at p. 5-10. However, Mr. Garcia was not directly involved in the loading or offloading of cocaine. PSR, ¶ 10. In addition, the cocaine was not imported to or exported from the United States. PSR, ¶ 10.

### II. *3553(a)(2): The Need for Just Punishment*

Section 3553(a)(2)(A) requires a sentencing court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. In this case a variance sentence of 120 months incarceration, followed by three years of supervised release, is sufficient but not greater than necessary to comport with the statutory sentencing goals. The direct and very real consequence of Mr. Garcia's conviction and incarceration is that he will be separated from his family, and he will be unable to fulfill his financial and familial responsibilities to his wife and children. This is will result in a tremendous hardship as Mrs. Garcia is not employed outside the home. The financial impact alone on Mrs. Garcia and the five children will be devastating.

The court can also consider the collateral consequences of Mr. Garcia's conviction as a relevant factor to consider in the "need" for the sentence imposed to reflect just punishment. *See United States v. Nesbeth*, 2016 U.S. Dist. LEXIS 68731 (EDNY May 24, 2016) (providing a thorough review of the collateral consequences of a felony conviction and incorporating them

into an analysis of the 3553(a) factors to arrive at a probationary sentence for a young offender convicted of importing and possessing with intent to distribute cocaine).

Mr. Garcia is now a convicted felon. Once incarcerated he will no longer be able to provide any financial assistance to his wife and children. Mrs. Garcia, who has not worked outside the home since the late 1990's, will now have to become the primary "bread winner" for their five children. Significantly, Mrs. Garcia has never worked outside the home while residing in the United States. As stated previously, Mrs. Garcia's conviction and resulting sentence will have a devastating impact on the Garcia family. Mr. Garcia's felony conviction and consequences that flow from it constitute significant punishment and a ten-year prison sentence is more than sufficient to further the sentencing goal of punishment.

In addition, after finishing his prison sentence, Mr. Garcia faces the very real possibility of being deported to Guatemala. While deportation is always a collateral consequence of a felony conviction by an individual who is not a United States citizen, the stakes are even higher for Mr. Garcia. If he is deported, Mr. Garcia will have to decide whether to move his family to Guatemala, the country they fled in 2007 after an unsuccessful attempted kidnapping of one of the Garcia children, or remain alone in Guatemala while his family continues to reside in the United States. Deportation constitutes another collateral consequence from Mr. Garcia's conviction that will result in extreme hardship on Mr. Garcia and his family.

After his release from prison (if he is not deported), Mr. Garcia will be placed on supervised release. The Supreme Court has recognized that supervised release is not merely a slap on the wrist, as it results in severe restrictions on the defendant. *See Gall v. United States*, 128 S. Ct. 586, 595-96 & n.4 (2007) (even non-custodial sentence imposes serious restrictions on one's liberty and constitutes punishment, not a "free pass"). The terms of supervised release will

almost certainly restrict who Mr. Garcia can associate with, where he can travel, what kind of work he does, and possibly whether he can open lines of credit. For Mr. Garcia, who does business in Central America, this will hardly constitute a "slap on the wrist." Thus, the combination of a 120-month term of imprisonment, to be followed by three years of supervised release (if he is not deported from the United States) represents sufficient punishment for Mr. Garcia in this case.

### III. *3553(a)(2): The Need for Deterrence*

The Sentencing Commission's data reveal that defendants like Mr. Garcia, who are in a low criminal history category, are married, employed, do not have a history of substance abuse and are in their 40s or older at the time of conviction, are much less likely to re-offend than other defendants. *See* Measuring Recidivism: The Criminal History Computation of The Federal Sentencing Guidelines, May 2004, pp. 11-13 (hereafter Measuring Recidivism) http://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2004/200405_Recidivism_Criminal_History.pdf. Similarly, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006).

In this case, both the personal characteristics of Mr. Garcia and the available research support the conclusion that ten-year term of imprisonment will be more than sufficient to achieve the sentencing goal of deterrence.

### IV. *3553(a)(2): The Need for Incapacitation*

The proposed ten-year term of imprisonment for Mr. Garcia will more than satisfy the need for incapacitation. The Sentencing Commission's own data reveal that 96% of all

individuals sentenced with a Category I criminal history did *not* re-offend (as measured by reconviction on a new offense). *See* Measuring Recidivism, p. 6 and Exhibit 2 to the Report. That risk is particularly low when the defendant, as in this case, is married, does not have a history of substance abuse and is over 40 years old at the time of sentencing. *Id.* at Exhibits 9 and 10. Finally, offenders like Mr. Garcia with zero criminal history points have a rate of recidivism half that of offenders just with one criminal history point. *See* Sent'g Comm'n, Recidivism and the "First Offender," at 13-14(May 2004) (hereinafter First Offender). In considering a sentence for Mr. Garcia, this Court can consider the statistically low risk of recidivism that he poses. It is also fair to also take into account his other personal characteristics as described in the PSR in determining that the risk of recidivism by Mr. Garcia is low.

### V. *3553(a)(2): The Kind of Sentences Available*

A sentence below the recommended guideline range (20 years, the statutory maximum) will provide just punishment. A ten-year term of imprisonment would obviously be very restrictive of liberty, highly effective in the determent of crime and amply retributive. The Supreme Court in *Gall* agreed with United States District Judge Pratt that probation is a "'substantial restriction of freedom,' " 128 S.Ct. at 595, stating:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

App. 109.

*Id.* at 595-96 (footnote omitted). In Mr. Garcia's case, a sentence of ten years imprisonment would obviously be significantly more restrictive than the sentence of probation in *Gall*. In this case, there is little likelihood of Mr. Garcia committing any future offense. He has no criminal history, a track record of positive community involvement, and tremendous family support to rely upon.

## Conclusion

THEREFORE, given all of the information outlined in this Sentencing Memorandum and in the PSR, Mr. Garcia respectfully requests this Court grant his motion for a downward variance, and impose a sentence of 120 months incarceration, to be followed by three years of supervised release. Such a sentence would be "sufficient, but not greater than necessary" to comply with the appropriate sentencing purposes.

Respectfully Submitted,

LUIS FERNANDO GARCIA-ORELLANA

By: _____/s/_____

Patrick W. McLaughlin
California Bar No. 89657
205 South Broadway, Suite 902
Los Angeles, California 90012
Phone: (213) 437-0122
Fax:   (213) 628-3908
Email: pwmclaughlin50@gmail.com




_____/s/_____
William J. Dinkin
Va. Bar No. 31198
Stone, Cardwell & Dinkin, PLC
101 Shockoe Slip, Suite K
Richmond, CA 23219
Phone: (804) 359-000
Fax: (804) 257-5555
Email: bill.dinkin@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the  2nd  day of May, 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following to:

Erik S. Siebert
Assistant United States Attorney
919 E Main St
Suite 1900
Richmond, VA 23219
(804) 819-4500
erik.s.siebert@usdoj.gov

and by electronic mail to:

Susan A. Hushour
Senior United States Probation Officer
701 East Broad Street, Suite 1150
Richmond, VA 23219
Tel: (804) 916-2536

                                                                                            /s/
                                                        Patrick W. McLaughlin
California Bar No. 89657
205 South Broadway, Suite 902
Los Angeles, California 90012
Phone: (213) 437-0122
Fax:   (213) 628-3908
Email: pwmclaughlin50@gmail.com

                                                        /s/
William J. Dinkin
Va. Bar No. 31198
Stone, Cardwell & Dinkin, PLC
101 Shockoe Slip, Suite K
Richmond, CA 23219
Phone: (804) 359-000
Fax: (804) 257-5555
Email: bill.dinkin@gmail.com